ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 MAY -4 AM 10: 46
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| CLIVE BROWN, | ) |
| Petitioner, | ) |
| v. | ) CV 310-057 |
| WALT WELLS, Warden, | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, commenced the above-captioned petition under 28 U.S.C. § 2241 contesting the execution of his sentence of confinement. Respondent has filed his response to the petition, (doc. no. 5), and Petitioner, in turn, filed a reply (doc. no. 9).[1] For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

### A. Procedural Background

Petitioner is serving a 135 month sentence for conspiracy to import five kilograms or more of cocaine. (Doc. no. 5, p. 1.) He has a projected release date of June 14, 2011, via good conduct time credit. (Id.) Petitioner filed this § 2241 petition contending that he has

---

[1] Respondent went on to file a response to Petitioner's reply. (Doc. no. 10.)

impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration that consisted of boycotting three specific meals served at MCF, in violation of prison regulations. (See generally doc. no. 1.)

Petitioner claims in his petition that the disciplinary procedures to which he was subjected violated due process. (See id. at 3.) As relief, Petitioner requests restoration of the 27 days of GCT. (See id., Attach. 1.) The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within 20 days of the date of service. (Doc. no. 2.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing. (See generally doc. no. 5.)

### B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided religious diet meals. (Doc. no. 5, Ex. 1, ¶ 6.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009. (Id.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 7.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 8.) Respondent

maintains that an incident report was prepared on January 29, 2009, but that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's Special Investigation Services ("SIS").[2] (Id. ¶¶ 9-10.) Respondent further states that the SIS investigation of 119 alleged inmate participants was finalized by Respondent on February 23, 2009. (Id. ¶ 10.) On February 25, 2009, the suspension of Petitioner's incident report was lifted, and the investigation of his incident report commenced. (Id. ¶ 11 & Attach. 2, § 22.) On that same date, an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id. ¶ 12 & Attach. 2, § 23.) The investigator then proceeded to question Petitioner about his involvement in the suspected boycott. (Id. ¶ 13, Attach. 2, § 24.) Respondent provides that although Petitioner stated that he did not eat breakfast, was in the library at lunch, and also worked in recreation, the investigator concluded, based on the report from the reporting staff member, that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. ¶ 13 & Attach. 2, §§ 24, 26-27.)

Petitioner was then charged with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Id., Attach. 2, § 26.) The UDC held a hearing on February 26, 2009, at which Petitioner appeared and provided a statement maintaining that he did not participate in any group demonstration and was not aware there had been a demonstration until he was told about it by MCF staff. (Id. ¶ 15 & Attach. 2, §§ 17, 21.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the

---

[2]Petitioner received a copy of the incident report on January 30, 2009. (Doc. no. 5, Ex. 1, ¶ 9.)

3

matter for a hearing by a DHO. (Id. ¶ 15 & Attach. 2, § 19.)

On February 26, 2009, the UDC also provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id. ¶ 16 & Attach. 4.) Petitioner chose to exercise his rights, and at the hearing on April 15, 2009, Petitioner, as well as Petitioner's staff representative, provided a statement on Petitioner's behalf. (Id., Attach 5; Attach. 6, §§ I(B), II(E) & III(B).)

On April 17, 2009, the DHO issued his written decision. (Id., Attach. 6, § IX.) In making his decision, Respondent explains that the DHO considered the meal monitoring records from MCF, the January 29th interview questionnaire, and a memorandum from the Assistant Chief of Security. (Id. ¶ 19 & Attach. 6, § III(D).) According to the DHO's report, the meal monitoring records indicated that Petitioner regularly received his noon and evening meals during the period leading up to the food boycott, but that he did not receive the meals identified as part of the group demonstration. (Id., Attach. 6, § V.) Furthermore, the DHO noted that Petitioner first indicated that he ate the evening meal on January 28, 2009, but changed his statement indicating that he must have been refereeing a game in the prison recreation area once he was told that the meal monitoring data indicated that he did not receive the evening meal. (Id.) The DHO also noted that, although Petitioner was in the library during the noon meal on January 29, 2009, the meal was announced in the library and Petitioner refused to attend the noon meal after he was made aware of the demonstration and instructed to participate in the noon meal. (Id.) In addition, the memorandum written by the Assistant Security Chief indicated that he monitored the serving of the Kosher meal at noon

4

on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner).[3] (Id.)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. ¶¶ 21-22 & Attach. 6, §§ V-VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id., Attach. 6, § VII.) With these facts in mind, the Court turns to the merits of the claim raised in the § 2241 petition.

## II. DISCUSSION

Petitioner claims that his due process rights were violated during the course of the events described. In particular, he asserts that the DHO's adverse decision, which resulted in the loss of 27 days of GCT, violated his constitutional due process rights. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he fails to provide a basis for relief. (See doc. no. 5, pp. 7-10.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following

---

[3]This one inmate did not receive an incident report. (Doc. no. 5, Ex. 1, Attach. 6, § V.)

minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (*per curiam*).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on January 30, 2009, Petitioner was provided with a copy of the incident report notifying him of the charges against him and on February 25, he was advised of his rights. (Doc. no. 5, Ex. 1, ¶¶ 9, 15 & Attach. 2, § 23.) On February 26, 2009, the UDC referred the matter to the DHO for a hearing. (Id. ¶ 15 & Attach. 2, §§ 19 & 21.) Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to have a staff representative provide a statement on his behalf and present evidence. (Id. ¶ 16 & Attach. 4.) Indeed, as noted in the DHO Report, Petitioner chose to exercise these rights; he was represented by a staff representative who made a statement on his behalf. (Id. ¶ 16 & Attach. 6, § II(E).) After Petitioner exercised his rights at the disciplinary hearing, the DHO issued a detailed report explaining the evidence upon which he relied in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id. §§ V, VII.) The DHO Report indicates that a copy was delivered to Petitioner on April 23, 2009, and Petitioner does not contest that he received this report. (Id. ¶ 24 & Attach. 6, § IX.) In fact, Petitioner attached a copy of the DHO Report to his § 2241 petition. (See doc. no. 1, pp. 13-16.)

Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the DHO, as well as the meal monitoring data and memorandum from the Assistant Chief of Security, demonstrate that Petitioner did

not eat the meals that were identified as the target of the Group Demonstration. (Id. § V.) Petitioner argues that the Court should obtain the "work sign in sheet" for the recreation area at MCF as well as the "log in sheet" from the library so that he can show that he was refereeing soccer and in the library during the evening meal on January 28, 2009, and the noon meal on January 29, 2009, respectively. (Doc. no. 9, p. 1.) Petitioner's argument is unpersuasive, as the DHO Report indicates that Petitioner first stated that he ate the evening meal on January 28, 2009, but later changed his story to indicate that he skipped the meal due to work in the recreation department when he was told that the records indicated he had not eaten the meal. (Doc. no. 5, Ex. 1, Attach. 6, § V.) More importantly, the DHO Report does not contradict that Petitioner was in the library during the January 29, 2009 noon meal, but indicates that Petitioner chose not to participate in the noon meal <u>after</u> he was made aware of the demonstration and instructed to participate in the meal. (Id.) Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 4th day of May, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE